GOOD'S FURNITURE HOUSE, INC., Appellant,

v.

IOWA STATE BOARD OF TAX REVIEW, Appellee.

No. 85–827.

Supreme Court of Iowa.

Feb. 19, 1986.

Terry C. Hancock and Sheila K. Tipton, of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, and David L. Higgs and Dean B. Rhoads, of Sutkowski & Washkuhn Associates, Peoria, Ill., for appellant.

Thomas J. Miller, Atty. Gen., Harry M. Griger, Sp. Asst. Atty. Gen., and Marcia Mason, Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, McGIVERIN, SCHULTZ, and WOLLE, JJ.

WOLLE, Justice.

The Iowa use tax statute which we here construe obligates certain retailers to collect from their customers the tax owed to the Iowa Department of Revenue (department) on sales of tangible personal property used in Iowa. Iowa Code § 423.9 (1983) (all references are to the 1983 Iowa Code). The definitional section of the statute describes activities which obligate retailers to collect use tax. Iowa Code §§ 423.1(5), (6) (defining "[r]etailer" and "[r]etailer maintaining a place of business in this state"). Petitioner Good's Furniture House, Inc. (Good's Furniture), an Illinois retailer, appeals from an adverse judicial review determination upholding a use tax assessment covering the period April 1, 1977, through March 31, 1982. Good's Furniture maintains that the use tax statute does not reach its operations, that the statute violates due process if it does, and that the department should be estopped from collecting the tax. We find no merit in these arguments and affirm.

I. *Background Facts and Proceedings.*

Good's Furniture is an Illinois corporation with its principal place of business at its retail store in Kewanee, Illinois, which is located about fifty-five miles east of the Iowa-Illinois border. At its store Good's Furniture sells furniture, carpet and draperies. During the assessment period in question, about ten percent of its retail sales were to Iowa residents. Good's Furniture regularly solicited customers through intensive television advertising on stations broadcasting into Iowa.

The volume of sales to Iowa residents enabled Good's Furniture to provide free regular delivery service in its own trucks to customers residing in the Iowa cities of

Davenport and Bettendorf. Its employees made regular but less frequent truck deliveries to Iowa customers residing outside those cities. Each week Good's Furniture trucks delivered merchandise at ten to twelve Iowa locations. The employees making those regular deliveries into Iowa placed the merchandise in Iowa homes, assembled some items, and on occasion repaired minor defects in the delivered goods.

The department found that those activities in Iowa warranted assessment of use tax against Good's Furniture covering the five year period in question. The department also denied a claim for refund which Good's Furniture filed after paying the tax under protest. A contested case evidentiary hearing yielded a final agency decision of the Iowa State Board of Tax Review upholding denial of the claim for refund. The district court on judicial review affirmed.

Good's Furniture has steadfastly challenged the department's assessment of use tax on three grounds. It contends: (1) it was not a retailer maintaining a place of business in Iowa within the meaning of the Iowa use tax statute; (2) the assessment of use tax under the statute violated its constitutional right to due process; and (3) the department should be estopped from assessing use tax because department representatives earlier informed it that Iowa use tax need not be collected.

Our function in this judicial review proceeding is to determine whether the final agency decision violated statutory or constitutional provisions or in some other respect must be overturned on a ground provided for in the Iowa Administrative Procedure Act, Iowa Code section 17A.19(8). *See Kartridg Pak Co. v. Department of Revenue*, 362 N.W.2d 557, 559 (Iowa 1985).

### I. *Statutory Authority to Assess Use Tax.*

We first must examine the interconnected wording of several sections of the use tax statute to determine whether the department could require Good's Furniture to collect and pay the tax owed by its Iowa customers. Section 423.9 imposes the duty to collect and remit the tax on retailers who maintain a place of business in Iowa, and one definitional subparagraph extends the obligation to a retailer who has "any agent operating within this state under the authority of the retailer." Iowa Code § 423.1(6) (defining "[r]etailer maintaining a place of business in this state"). The critical definition of "retailer" is found in Iowa Code section 423.1(5):

> *"Retailer"* means and includes every person engaged in the business of selling tangible personal property for use within the meaning of this chapter; provided, however, that when in the opinion of the director it is necessary for the efficient administration of this chapter to regard any salesman, representatives, truckers, peddlers, or canvassers as the agents of the dealers, distributors, supervisors, employers, or persons under whom they operate or from whom they obtain the tangible personal property sold by them, irrespective of whether they are making sales on their own behalf or on behalf of such dealers, distributors, supervisors, employers, or persons, the director may so regard them and may regard the dealers, distributors, supervisors, employers, or persons as retailers for purposes of this chapter.

(Emphasis in original.)

Good's Furniture contends that it was not a "retailer" as defined in that definitional subparagraph because its employees delivering merchandise by truck were not salespersons and made no sales. It reads the phrase "irrespective of whether they are making sales on their own behalf or on behalf of [other persons]" to mean that the employees in Iowa must at a minimum be persons "making sales" to qualify them as agents of a retailer. We find that reading of the statutory language is too narrow. First, it does not accommodate the specific reference to "truckers" as persons who may be deemed agents. Secondly, it ignores the fact that the phrase "property sold by them" is stated in the alternative to the phrase "under whom they operate,"

indicating that a person may be an agent without being a seller of merchandise.

The department's interpretation of section 423.1(5), in contrast, is sound because it takes into account the inclusion of the word "truckers" which describes an agent without a sales function. The department reads the "irrespective" phrase broadly to eliminate any requirement that the agent make sales, whether the agent by "any salesman, representatives, truckers, peddlers, or canvassers." Iowa Code § 423.1(5).

The meaning of this statute is a question of law, but we give deference and appropriate weight to the agency's interpretation. *Ballstadt v. Iowa Department of Revenue*, 368 N.W.2d 147, 148 (Iowa 1985); *American Home Products Corp. v. Iowa State Board of Tax Review*, 302 N.W.2d 140, 142 (Iowa 1981); *Schmitt v. Iowa Department of Social Services*, 263 N.W.2d 739, 745 (Iowa 1978); Iowa Code § 4.6(6). In construing statutes we seek to give effect to the entire statute. Iowa Code § 4.4(2). Moreover, it is appropriate for us to focus on the precise wording of this statutory definition. "The use of the words is the prerogative of the legislature." *State Tax Commission v. General Trading Co.*, 233 Iowa 877, 881, 10 N.W.2d 659, 661 (1943), *aff'd*, 322 U.S. 335, 64 S.Ct. 1028, 88 L.Ed. 1309 (1944) (construing language of statutory predecessor to Iowa Code § 423.1(6)). Only the department's interpretation gives sensible effect to all 124 words in this one-sentence statutory definition and accommodates the inclusion of "truckers" as non-selling agents of a retail concern.

■ The department's interpretation also serves the over-all purpose of the use tax statute, explained as follows in *Dain Manufacturing Co. v. Iowa State Tax Commission*, 237 Iowa 531, 534, 22 N.W.2d 786, 788 (1946):

> The purpose of the use-tax law is indirectly to tax sales that cannot be directly taxed under the Iowa sales-tax law. Since sales of property designed for use in Iowa cannot be taxed if consummated outside the state, our legislature has resorted to the plan (not uncommon in recent years) of taxing the use of such property in the state. The tax is on the use but it presupposes a prior sale. The tax serves the double purpose of producing revenue that otherwise might not be available and of furnishing some measure of protection to Iowa dealers from competition with outside vendors not subject to liability for sales tax.

It is apparent that the legislature intended non-selling truckers delivering goods into Iowa to be agents of persons by whom they are employed, in order that out-of-state merchandisers would not have an unfair competitive edge over Iowa retailers who must collect sales and use tax. *See* Iowa Code § 4.6(1) (legislative purpose may be considered in determining meaning of statute).

Our construction of the Iowa use tax statute is consistent with a recent decision of the South Dakota Supreme Court which, on very similar facts, construed nearly identical statutory language contained in that state's use tax statute. In the case of *In re State Sales or Use Tax Liability of Webber Furniture*, 290 N.W.2d 865 (S.D. 1980), the court held that a Nebraska furniture seller was a "retailer" because its employees trucked furniture to South Dakota customers. That court said:

> It is apparent that if the legislature intended to restrict the scope of SDCL 10–46–1(6) [the statutory equivalent of Iowa Code § 423.1(5) (1983)] to persons who solicit sales, truckers would have been excluded from the list of those persons who may be regarded as agents for purposes of this chapter. Furthermore, SDCL 10–46–1(6) includes the phrase, "under whom they operate," which is separable and distinct from that portion of the statute regarding sales made by other persons enumerated therein. The sale of merchandise by appellant to South Dakota residents which is trucked into the state by Webber's employees is within the use tax collection and remittance statutes; therefore, the state may require appellant to collect a use tax on

such sales and remit the same to the Department of Revenue.

*Id.* at 868. We reach the same conclusion on similar reasoning.

■ The department and the district court on judicial review correctly determined that Good's Furniture was obligated by Iowa statute. to collect and remit use tax on its sales of merchandise for use in Iowa.

## II. *Due Process.*

Good's Furniture also contends that it had insufficient contacts with Iowa to provide the nexus which must be present before an excise tax satisfies the due process requirements of the fourteenth amendment to the United States Constitution.

Good's Furniture relies primarily on *Miller Brothers Co. v. Maryland,* 347 U.S. 340, 74 S.Ct. 535, 98 L.Ed. 744 (1954), in which the Court found that Maryland had insufficient connection with a Delaware furniture retailer to impose its use tax without violating due process. In that case the Delaware retailer had no offices, salesmen, or employees in Maryland except for intermittent occasions when its employees delivered merchandise into Maryland. Some of the merchandise sold to Maryland customers was delivered by common carrier. There was little evidence that the Delaware retailer directly solicited Maryland customers. The Court explained that to satisfy due process there must be "some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax." 347 U.S. at 44–45, 74 S.Ct. at 539, 98 L.Ed. at 748.

More recent decisions of the United States Supreme Court have eroded the holding of *Miller Brothers.* In *Scripto, Inc. v. Carson,* 362 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d 660 (1960), a Georgia merchandising corporation solicited orders in Florida through the use of ten resident "jobbers." Scripto, Inc. had no offices, property or full-time employees in Florida, but the jobbers would forward orders to Georgia for shipment of the goods. The court applied the nexus test adopted in *Miller Brothers,* but held that the requisite minimum con-

tacts with Florida were sufficient to justify imposition of use tax liability even though the jobbers were independent contractors.

The next case in the series, *National Bellas Hess, Inc. v. Department of Revenue,* 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967), involved an Illinois ruling imposing a use tax obligation on a Missouri-based mail order house whose sole contacts with Illinois were by mail or common carrier. The court again applied the *Miller Brothers* nexus test and held that a state could not constitutionally require a seller to collect use tax where the seller had no connection with the taxing state's customers apart from use of the mail or common carriers.

In a more recent Supreme Court decision addressing this issue, *National Geographic Society v. California Board of Equalization,* 430 U.S. 551, 97 S.Ct. 1386, 51 L.Ed.2d 631 (1977), California required the society to collect use tax owed by its customers who purchased maps, atlases, globes and books through its interstate mail order business. The Society did maintain two offices in the state, but the activities of those offices were unrelated to its mail order business. California contended that the seller's activities within the state, although unrelated to the sales transactions, were sufficient to require imposition of the tax imposed by reason of the mail order sales. The Supreme Court agreed and explained:

> [T]he relevant constitutional test to establish the requisite nexus for requiring an out-of-state seller to collect and pay the use tax is not whether the duty to collect the use tax relates to the seller's activities carried on within the State, but simply whether the facts demonstrate "some definite link, some minimum connection, between [the state and] the *person* ... it seeks to tax."

430 U.S. at 561, 97 S.Ct. at 1393, 51 L.Ed.2d at 640 (emphasis in the original) (citations omitted) (quoting *Miller Brothers,* 347 U.S. at 34–35, 74 S.Ct. at 539, 98 L.Ed. at 748).

■ We conclude that the *Miller Brothers* nexus test, as refined by these later Supreme Court cases, was satisfied by the department's showing that Good's Furniture directly solicited a large volume of Iowa sales by intensive television advertising, then regularly serviced its Iowa customers by delivering merchandise in its own trucks with its own employees.

Other state court decisions are in accord with our conclusion on this due process issue. In a case involving the Vermont use tax applied to a New Hampshire furniture and carpet seller with interstate business similar to that of Good's Furniture, the Vermont Supreme Court rejected a due process challenge after carefully parsing United States Supreme Court decisions and summarizing their holdings as follows:

> First, it seems clear that the nexus requirement for sales taxes and use taxes is different, and that a lesser nature or extent of corrections will pass constitutional muster in the latter case. Second, the "presence" of the out-of-state seller within the taxing state must be more than occasional deliveries by company truck as in *Miller Brothers*, but perhaps less than the degree of "presence" established by ten jobbers soliciting orders within the state in *Scripto*. Third, the requisite nexus can be found in the case of a mail order seller with retail outlets, solicitors or property within the taxing state as in *National Geographic*, but cannot be found where the out-of-state seller merely communicates with customers in the taxing state by mail or common carrier as in *National Bellas Hess*.

*Rowe-Genereux, Inc. v. Vermont Department of Taxes*, 138 Vt. 130, 137, 411 A.2d 1345, 1349 (1980). Use tax statutes have also survived due process challenges in relatively recent Ohio and South Dakota cases. *Cooey-Bentz Co. v. Lindley*, 66 Ohio St.2d 54, 56, 419 N.E.2d 1087, 1088 (1981) ("Making deliveries, installations, and repairs in Ohio with company-owned vehicles, appellant regularly took advantages of this state's police protection, as well as the roads provided by the state for the use of its residents."); *In re State Sales or Use Tax Liability of Webber Furniture*, 290 N.W.2d 865, 869 (S.D.1980) ("As long as appellant chooses to do business in this state, as evidenced by the regular presence of its merchandise haulers and employees delivering purchases to South Dakota residents, there is a sufficient nexus between the state and appellant to constitutionally support the imposition of use tax collection responsibility upon appellant.").

Good's Furniture had sufficient Iowa contacts to allow the department to impose upon it the requirements of Iowa's use tax statute without violating constitutional due process requirements.

### III. *Estoppel.*

Good's Furniture bases its estoppel theory on conversations with department employees which allegedly took place both before and after the audit period in question. Good's Furniture presented testimony that it collected use tax for about a year, then in 1972 had its accountant phone to inquire of the department whether an out-of-state seller delivering merchandise into Iowa homes was required to collect the tax. The accountant apparently was told by someone named Pierson or Peterson that it need not collect the tax, and thereafter it discontinued collecting Iowa use tax. Good's Furniture also relies on a similar conversation its managing officer had with an unidentified department representative after the department had commenced its audit sometime in 1982.

■ The hearing officer's findings, adopted in the final agency decision, disclose at best a cloudy picture of just what took place in those phone conversations. The final agency decision included the following findings of fact on the estoppel issue:

> [E]arly in December 1972, an employee of the CPA firm spoke with an H.L. "Pierson" or "Peterson," and that individual informed the employee that no Iowa use tax was due from the Protestor since the Protestor merely delivered

goods into Iowa and did not solicit sales through agents or maintain a store there. The position which Mr. "Pierson" or "Peterson" held with the Department is unknown. Also, the testimony does not reveal how many weekly deliveries the Protestor was making in Iowa in late 1972 and whether the CPA firm's employee mentioned that number to the Department employee.

Both the agency and the district court on judicial review concluded from those record-supported facts that Good's Furniture had not sustained its burden to prove estoppel, and we agree with that conclusion.

■ The agency properly placed on Good's Furniture the burden to establish with strict proof each element of estoppel. *Paveglio v. Firestone Tire & Rubber Co.*, 167 N.W.2d 636, 639 (Iowa 1969). Because the agency as fact finder determined that Good's Furniture had not met its burden of proof, we will not interfere with that determination unless estoppel was established as a matter of law. *Heidemann v. Sweitzer*, 375 N.W.2d 665, 670 (Iowa 1985); *Pohlman v. Ertl Co.*, 374 N.W.2d 253, 255 (Iowa 1985). The evidence in this record falls far short of proving all elements of estoppel as a matter of law.

■ Our court has addressed estoppel in two relatively recent cases involving tax collection. *Iowa Movers & Warehouseman's Association v. Briggs*, 237 N.W.2d 759, 764 (Iowa), *cert. denied*, 429 U.S. 832, 97 S.Ct. 94, 50 L.Ed.2d 96 (1976); *S & M Finance Co. Fort Dodge v. Iowa State Tax Commission*, 162 N.W.2d 505 (Iowa 1969). In neither case did we decide whether estoppel can be invoked against the state when the collection of revenue is involved, although we noted that other courts are split on the question. *Iowa Movers*, 237 N.W.2d at 765; *S & M Finance Co.*, 162 N.W.2d at 510. It is clear, however, that a person relying on a representation by a state employee to establish estoppel must at a minimum prove that the employee had authority and sufficient relevant factual information to make a meaningful representation binding on the state. *S & M Finance Co.*, 162 N.W.2d at 511 ("The record neither shows the nature of [the state employee's] work nor the extent of his authority. Without such showing plaintiff completely fails to establish an estoppel.").

Good's Furniture has not established as a matter of law that it had a right to rely upon any of the alleged statements it attributes to department employees. It has not shown that department employees in 1972 fully understood the facts pertinent to the audit period here in question, nor that they were authorized to speak for the department in answering the accountant's question concerning the obligation of Good's Furniture to collect use tax then or in the future.

Like the district court, we uphold the final agency determination that Good's Furniture was properly required to collect and remit use tax owed by its Iowa customers during the period covered by the department's audit. The claim for refund of use taxes paid is without merit.

AFFIRMED.