NO. 4-10-0290          Filed 12/28/10

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| J. BRIAN McDONALD, as Independent | ) | Appeal from |
| Administrator of the Estate of BETTY | ) | Circuit Court of |
| J. McDONALD, | ) | Sangamon County |
|      Plaintiff-Appellee, | ) | No. 08MR554 |
|      v. | ) | |
| THE ILLINOIS DEPARTMENT OF HUMAN | ) | |
| SERVICES and MICHELLE R.B. SADDLER, | ) | |
| Its Secretary; and THE ILLINOIS | ) | |
| DEPARTMENT OF HEALTHCARE AND FAMILY | ) | |
| SERVICES and JULIE HAMOS, Its | ) | Honorable |
| Director, | ) | John W. Belz, |
|      Defendants-Appellants. | ) | Judge Presiding. |

_____

JUSTICE POPE delivered the opinion of the court:

This Medicaid case asks us to resolve a tension between the need to preserve scarce public medical resources for the truly needy and the desire of families to preserve their assets while qualifying for medical assistance through a perceived legitimate loophole. This tension manifests itself in this case where an applicant's eligibility for medical assistance was delayed by the imposition of a penalty period by the transfer of nearly $125,000 in cash gifts in the year leading up to her application for benefits.

In June 2007, plaintiff, J. Brian McDonald, acting

pursuant to power of attorney, applied for medical assistance on behalf of his mother, Betty J. McDonald, to help cover her long-term-care expenses. Defendant, the Department of Healthcare and Family Services (Healthcare and Family Services), investigated Betty's application, and defendant, the Department of Human Services (Human Services), approved Betty's application but imposed a penalty period of noncoverage because of certain nonallowable transfers Brian made on behalf of Betty.

These nonallowable transfers consisted of systematic monthly gifts from Betty's checking account to Brian and his siblings. Each month, one of Betty's children would receive two checks: one for an amount less than twice Betty's monthly long-term-care expenses and one for the exact amount of Betty's monthly social-security benefits. When added together, these gifts totaled more than twice Betty's monthly long-term-care expenses, resulting in a two-month penalty period for each month's gifts.

Brian appealed the penalty period, arguing the social-security gifts, each of which was labeled a "gift of income" in the check's memorandum line, were not subject to the asset-transfer policy that resulted in the penalty. Under Brian's theory, only the gifts of assets should have been used in calcu-

lating the penalty period; since each gift of assets was for less than twice Betty's monthly long-term-care expenses, each would result in only one penalty month. Brian claimed the transfers of income were exempted from the penalty, citing Human Services' "Cash, SNAP, and Medical Policy Manual" (Medical Policy Manual). He also relied on a January 2001 letter from the chief of the bureau of policy of the Department of Public Aid (later succeeded by Healthcare and Family Services as the agency charged with executing Illinois's Medicaid laws), which gave an interpretation of the policy manual's asset-transfer provisions for an unrelated individual. After a hearing held before an administrative law judge, Human Services upheld the imposition of the penalty period, issuing the departments' final administrative decision.

Brian then sought administrative review in the circuit court, presenting two arguments. First, Brian argued the departments misapplied their own policies, again citing the Medical Policy Manual and the January 2001 letter. Second, Brian alternatively argued the departments were estopped from changing the way the policy manual was applied and from departing from the January 2001 letter's interpretation of their policies. The court reversed and remanded to Human Services for it to rescind the portion of the penalty period that resulted from the "gifts

of income."

The departments appeal, arguing federal and state statutory laws require Human Services to impose a penalty period for transfers of income, as well as assets, for less than fair market value and asserting the departments' own rules and policies are in accord with these statutes. Again, Brian maintains the departments misinterpreted their rules and policies and argues, alternatively, the departments are estopped from departing from the interpretation provided in the January 2001 letter.

We reverse the circuit court's judgment and affirm the administrative decision because we find (1) the departments correctly applied the law they are charged with enforcing; (2) the relevant sections of the Medical Policy Manual do not conflict with that law; and (3) the departments were not bound by the January 2001 letter.

I. BACKGROUND

Betty moved into a nursing home in June 2006. There, she incurred continuing monthly long-term-care expenses of $4,365. Each month from June 2006 through December 2006, Betty received $1,542.01 from social security and $573.90 from an annuity. Beginning January 2007, Betty's monthly income from social security increased to $1,583.44, and she continued to

receive $573.90 from her annuity. The annuity payments were never deposited into any of Betty's bank accounts. These annuity payments were never considered by the departments in setting the penalty period and are not an issue on appeal. Beginning in June 2006 and continuing through June 2007, through Brian, as power of attorney, Betty made gifts by check nearly each month to one of her children. These checks were marked as either gifts of assets or gifts of income in the memorandum line. Gifts of assets were in the amount of $7,500 from June 2006 through August 2006 and in the amount of $7,800 from September 2006 through June 2007. Gifts of income were in the amount of $1,542.01 from June 2006 through December 2006 and in the amount of $1,583.44 from January 2007 through June 2007.

Brian applied for medical-assistance benefits on Betty's behalf in June 2007. Healthcare and Family Services determined the gifts noted above were nonallowable transfers under the Medical Policy Manual and calculated a penalty period from March 2007 through July 2008. Healthcare and Family Services approved Betty's application for medical assistance subject to the 17-month penalty period. On Betty's behalf, Brian appealed the portion of the penalty period attributable to the "gifts of income," and Human Services upheld the full penalty

- 5 -

period after a hearing by an administrative law judge.

After receiving the unfavorable administrative decision, Brian initiated this administrative-review action in the circuit court with Betty as the named plaintiff. On administrative review, the circuit court reversed and remanded with directions "to exclude from each of the monthly transfer calculations[] all transfers of income made by [Betty] during that same calendar month." The court appeared to be persuaded by Brian's estoppel argument, which consisted of two subarguments, the first of which can also be understood as a separate argument based on a straight application of law.

First, Brian argued the plain meaning of a section from the Medical Policy Manual regarding "income mixed with an asset" demonstrates a gift of income made in the month when the income is received does not constitute a nonallowable transfer. The section provides, in similar language to sections in other portions of the policy manual, "Money considered as income for a month is not an asset for the same month. Any income added to a bank account is income for that month, and not a part of the account's asset value for the month." Department of Human Services, Medical Policy Manual, PM 07-02-06-a (eff. March 1, 1997) (hereinafter Medical Policy Manual); see also Medical

Policy Manual, PM 07-04-09-a (eff. October 1, 2010).  According to Brian, this means the funds comprising the gifts Brian made to himself and his siblings from Betty's social-security benefits never became an asset.  Because the money was not an asset, according to Brian, it cannot be subject to the departments' "asset-transfer" or "transfer-of-asset" policy.

Second, Brian argued the departments were estopped from deviating from the interpretation of policy expressed in a letter written by the chief of the bureau of policy development of the Department of Public Aid.  The letter was written by then-chief John Rupcich in January 2001 in response to an inquiry by Joe Oettel, who appears not to be related in any way to this case or the parties.  Oettel inquired, relying on the above-quoted language from the policy manual, "Does this mean that income given away to another person during the same month it is received is NOT subject to the asset transfer policy and therefore is NOT used in calculating a penalty period as explained in [the policy manual section]?"  Rupcich responded, without reference to any discrete facts or circumstances, "Income given away during the same month it is received is not subject to the transfer of asset policy."  According to Brian, this statement by the chief of the bureau of policy was a general interpretation of Illinois's

Medicaid/medical-assistance law, made by the agency charged with implementing it, that bound the departments in future medical-assistance cases and on which applicants can rely. Thus, according to Brian, the departments' departure from this interpretation in Betty's case was arbitrary and capricious.

In October 2009, the circuit court, having accepted Brian's estoppel argument, reversed the administrative decision and remanded to the departments to rescind Betty's penalty period insofar as it resulted from their inclusion of Brian's gifts of Betty's income in the calculation of nonallowable transfers. In November 2009, the departments filed a motion to reconsider the court's judgment. Later that month, the court allowed Brian to substitute himself, as independent administrator of Betty's estate, for Betty, who had died in September 2009, as plaintiff in this action. In March 2010, the court denied defendants' motion to reconsider.

This appeal followed.

## II. ANALYSIS

On appeal, defendants maintain the circuit court erred because both Brian's interpretation of the policy manual and the interpretation expressed in the January 2001 letter were contrary to federal and state statutes governing medical-assistance

- 8 -

eligibility and benefits. According to defendants, certain provisions of the federal medical-assistance laws are binding on any states participating in the Medicaid program. Among these provisions are the asset-transfer policy and the corresponding penalties at issue in this case. Defendants point to state legislation designed to keep the state in compliance with the federal asset-transfer policy and penalty provisions and a rule from the Illinois Administrative Code governing state asset-transfer policy. Based on these authorities, which defendants insist control over any internal, unpromulgated department policies, defendants maintain the policy manual as interpreted by Brian cannot be given force to disallow Betty's full penalty period. Alternately, defendants maintain the departments were required to depart from the interpretation contained in the January 2001 letter.

In response, Brian argues the federal and state stat-utes are irrelevant because his argument from the beginning of the proceedings has been that the departments misapplied their own rules and policies. According to Brian, the departments are bound to follow both the policy manual and the letter interpret-ing it consistently in every case. Because the departments failed to adhere to these authorities in Betty's case, Brian

- 9 -

maintains, the penalty period attributable to his gifts of Betty's income should be vacated under either of his two theories. Those theories are (1) the departments misinterpreted their rules and policies, and (2) even if legally correct, the departments were estopped from applying their interpretation because it marked a departure from their previous interpretation evidenced by the January 2001 letter.

We agree with defendants.

## A. Standard of Review

On appeal in an administrative-review action, we review the departments' decision, not the circuit court's, in the sense that we give the circuit court's decision no deference. See Cinkus v. Village of Stickney Municipal Officers Electoral Board, 228 Ill. 2d 200, 212, 886 N.E.2d 1011, 1019 (2008). The scope of judicial review of administrative decisions "extend[s] to all questions of law and fact presented by the entire record before the court." 735 ILCS 5/3-110 (West 2008). Neither party challenges the departments' findings of fact; rather, they dispute the interpretation of the relevant statutes, regulations, and provisions of the departments' policy manual and the extent to which the departments are bound by the January 2001 letter and Brian's alleged reliance on it. These are legal questions, which

we review de novo.  Cinkus, 200 Ill. 2d at 211, 886 N.E.2d at 1018.  However, the departments' interpretation of their own rules and regulations " 'enjoys a presumption of validity.' " Montalbano v. Department of Children & Family Services, 343 Ill. App. 3d 471, 479, 797 N.E.2d 1078, 1084 (2003), quoting Nolan v. Hillard, 309 Ill. App. 3d 129, 143, 722 N.E.2d 736, 747 (1999).

B. Gifts of Income and Asset-Transfer Policy

Federal and state statutes, state administrative rules, and Human Services' departmental Medical Policy Manual all support defendants' conclusion that gifts of income are subject to asset-transfer policy and the corresponding penalties at issue in this case.  Consequently, defendants' imposition of a 17-month penalty period on Betty's eligibility for medical assistance was proper.

Medicaid is "a cooperative program in which the federal government reimburses state governments for a portion of the costs to provide medical assistance" to, among others, medically needy persons with low income and low assets who contribute a mandatory amount of any excess assets to their own healthcare costs.  Gillmore v. Illinois Department of Human Services, 218 Ill. 2d 302, 304-05, 843 N.E.2d 336, 338 (2006).  States that opt into Medicaid "must comply with certain broad requirements

- 11 -

imposed by federal statutes and regulations." <u>Gillmore</u>, 218 Ill. 2d at 305, 843 N.E.2d at 338. Among these requirements is that the state implement and enforce the asset-transfer policies defined by the federal Medicaid statute (see 42 U.S.C. §1396p (2006)). See <u>Gillmore</u>, 218 Ill. 2d at 306, 843 N.E.2d at 339. In turn, the federal asset-transfer policy mandates a penalty period of noncoverage for medical-assistance applicants who divest their property in order to qualify for benefits by trans-ferring it for less than fair market value. <u>Gillmore</u>, 218 Ill. 2d at 306, 843 N.E.2d at 338-39.

Asset transfers are defined consistently in the federal and state medical-assistance statutes, state regulations promul-gated by Human Services, and Human Services' Medical Policy Manual. The federal statute imposes a penalty when an applicant or his or her spouse "disposes of assets for less than fair market value" within a certain period leading up to the appli-cant's request of benefits. 42 U.S.C. §1396p(c)(1)(A) (2006). In turn, the statute defines "assets" in terms of income and resources. "The term 'assets', with respect to an individual, includes all income and resources of the individual and of the individual's spouse, including any income or resources which the individual or such individual's spouse is entitled to but does

not receive because of action." 42 U.S.C. §1396p(h)(1) (2006).

Thus, under the federal statute, a transfer of a medical-assistance applicant's income for less than fair market value would subject the applicant to penalties. This result is mandated on all states that participate in the Medicaid program. 42 U.S.C. §1396p(c) (2006).

State policies on transfers of assets comply with the federal requirement. The Illinois Public Aid Code (Code) prohibits transfers of a medical-assistance applicant's interest in personal property for less than fair market value. Section 5-2.1(a) of the Code provides, in pertinent part,

"To the extent required under federal law, a person shall not make or have made a *** transfer of any legal or equitable interests in *** personal property, whether vested, contingent[,] or inchoate, for less than fair market value. A person's interest in *** personal property includes all income and assets to which the person is entitled or to which the person would be entitled if the person had not taken action to avoid receiving the interest." 305 ILCS 5/5-2.1(a)

- 13 -

(West 2008).

As it includes income in a person's interest in personal property, the state statute, like the federal statute, would prohibit the transfer of an applicant's income for less than fair market value.

The relevant section of the Illinois Administrative Code (Administrative Code) is consistent with these federal and state statutes, though less explicit in its operation.  Rather, section 120.387(d) of Title 89 of the Administrative Code merely defines a transfer of assets in terms of transfers of personal property.  Specifically, in the case of a person in long-term care, it provides,

> "A transfer of assets occurs when an institutionalized person[] *** buys, sells[,] or gives away real or personal property or changes *** the way property is held. *** A transfer occurs when an action or actions are taken which would cause an asset or assets not to be received (for example, waiving the right to receive an inheritance)."  89 Ill. Adm. Code §120.387(d), as amended by 23 Ill. Reg. 11301, 11310 (eff. August 27, 1999).

Sections 120.387(e) and (f) define the circumstances under which a transfer is allowable or nonallowable. 89 Ill. Adm. Code §§120.387(e), (f), as amended by 23 Ill. Reg. 11301, 11310-11312 (eff. August 27, 1999). Nonallowable transfers incur penalty periods of ineligibility. 89 Ill. Adm. Code §120.387(f), as amended by 23 Ill. Reg. 11301, 11312 (eff. August 27, 1999). By defining asset transfers in relation to transfers of personal property rather than assets, the Administrative Code does not distinguish between transfers of assets and transfers of income. That is, if a transfer of income is made under circumstances that would render any other transfer nonallowable, the transfer of income is itself nonallowable. This result is consistent with the federal and state statutes on asset-transfer policy and the corresponding penalties.

These provisions and federal and state law are extrapolated in Human Services's Medical Policy Manual. The Medical Policy Manual is comprised of a policy manual, which describes the Medicaid laws and provides general guidance on Medicaid issues, and a Worker's Action Guide, which gives more specific guidance to agency caseworkers in determining eligibility and notifies them of common difficulties. The entire Medical Policy Manual is available to the public online, although

it appears to be primarily an internal manual to guide employees of the departments in navigating Medicaid issues.

The Medical Policy Manual is consistent with the federal and state statutory and administrative laws on transfers of assets and related penalties. Like the Administrative Code, the manual defines "transfer of assets" in terms of personal property without distinguishing between income and assets. Section PM 07-02-20 of the Medical Policy Manual states, in pertinent part,

> "An asset transfer occurs when a client or their spouse *** buys, sells, [or] gives away real or personal property or changes the way property is held. *** A transfer *** occurs when an action is taken that causes an asset not to be received (for example, waiving the right to receive an inheritance)." Medical Policy Manual, PM 07-02-20 (eff. April 17, 1998).

Compare Medical Policy Manual, PM 07-02-20 (1998), with 89 Ill. Adm. Code §120.387(d), as amended by 23 Ill. Reg. 11301, 11310 (eff. August 27, 1999) (quoted above). In turn, section PM 07-02-06 of the policy manual defines "personal property" as

- 16 -

"anything owned by a person that is not land or permanently affixed to land," including checking-account funds. Medical Policy Manual, PM 07-02-06 (eff. March 1, 1997). The policy manual goes on to define allowable and nonallowable transfers but both relate back to the definition of "asset transfer" that would include transfers of income as well as transfers of assets. See Medical Policy Manual, PM 07-02-20-b, 07-02-20-c, 07-02-20-d (1998) (eff. April 17, 1998, March 1, 1997, and April 17, 1998, respectively).

These authorities support defendants' determination that the gifts of Betty's income were nonallowable transfers of assets for less than fair market value that must be penalized. The federal statute mandates penalties for nonallowable transfers of a medical-assistance applicant's assets, where assets include that person's income. The Code prohibits nonallowable transfers of an applicant's interest in personal property, where that person's interest in property includes his or her income. The Administrative Code and the Medical Policy Manual penalize nonallowable transfers of personal property without excluding income from personal property. As they were made for less than fair market value in the months leading up to her application for medical assistance, Brian's gifts of Betty's social-security

- 17 -

benefits would result in a penalty period under any of these federal and state authorities.

Notwithstanding the plain meaning of section PM 07-02-20 of the policy manual, let alone the controlling statutes and regulations, Brian has maintained the departments overlooked a critical distinction in the Medical Policy Manual between income and assets. Brian cites section PM 07-02-06-a of the policy manual, which guides agency employees in calculating a person's assets. It states, in pertinent part, as follows:

> "Money considered as income for a month
> is not an asset for the same month. Any
> income added to a bank account is income for
> that month, and not a part of the account's
> asset value for the month. To figure the
> asset value of the account, subtract the
> income from the bank balance. For the
> following month(s) any remaining income in
> the account is an asset." Medical Policy
> Manual, PM 07-02-06-a (eff. March 1, 1997).

Brian asserts this section requires the departments to exclude transferred amounts of income in calculating nonallowable transfers because, essentially, he maintains "asset transfer"

- 18 -

policy can apply only to transfers of assets.

Brian misunderstands the significance of this distinction between income and assets in determining medical-assistance eligibility. The distinction is necessary to determine whether and to what extent an applicant must "spend down" his or her excess assets or income in order to be eligible for medical assistance. See 305 ILCS 5/5-2.07 (West 2008). Though equally essential to the operation of the medical-assistance program, the spend-down provisions are wholly separate from those defining eligibility penalties for nonallowable transfers. We find the manual's provisions regarding "income mixed with an asset," such as section PM 07-02-06-a, are irrelevant to the calculation of nonallowable transfers of personal property. Transfers of personal property for purposes of determining any penalty period include transfers of income and assets. When determining eligibility in the first instance, income which is consumed in a month on legitimate living expenses would not be counted as an asset. Accordingly, the departments did not err in their application of the law they are charged with implementing and enforcing or the Medical Policy Manual in Betty's case.

In addition, the State Medicaid Manual, a federal

manual that provides guidance to state employees in making penalty determinations, provides as follows:

> "Treatment Of Income As Asset.--Under OBRA 1993, income, in addition to resources, is considered to be an asset for transfer (and trust) purposes.  Thus, when an individual's income is given or assigned in some manner to another person, such a gift or assignment can be considered a transfer of assets for less than fair market value.
>
> * * *
>
> When you find that income or the right to income has been transferred, a penalty for that transfer <u>must</u> be imposed for institutionalized individuals (if no exceptions apply)."  (Emphasis in original.) State Medicaid Manual, Health Care Financing Administration Publication No. 45-3, Transmittal 64, §3258.6 (November 1994).

Even if a medical-assistance applicant's income were distinct from his or her assets for purposes of calculating nonallowable transfers for a month, we note we would reach the

same conclusion in Betty's case because a transfer of income would be a transfer of a future asset. Under the provision of the policy manual Brian relies on, income becomes an asset by remaining in the account where it is deposited until the following calendar month. Federal and state asset-transfer policy extends to transfers of a person's future interest in an asset, including actions that "would cause an asset or assets not to be received (for example, waiving the right to receive an inheritance)." 89 Ill. Adm. Code §120.387(d), as amended by 23 Ill. Reg. 11301, 11310 (eff. August 27, 1999). The social-security benefits deposited in Betty's account would have become an asset if Brian had not given them away in the month they were received. Under his interpretation of section PM 07-02-06-a of the policy manual, Brian's transfer of Betty's social-security benefits caused an asset not to be received the following month. Thus, even if we considered section PM 07-02-06-a and similar provisions to be relevant to the calculation of nonallowable transfers, the transfers of income involved in this case would still be subject to the departments' scrutiny. Accordingly, we reject Brian's argument that Betty's ineligibility period resulted from the departments' misapplication of their own policies regarding asset transfers, and we further find the

departments' imposition of a penalty period for Brian's nonallowable transfers of Betty's social-security income complied with the Medicaid laws that the departments are charged with implementing.

## C. Equitable Estoppel

Defendants argue, next, the circuit court erred in reversing on the basis of Brian's argument that his and Betty's reliance on the January 2001 letter estopped the departments from subjecting transfers of income to asset-transfer policy. We agree with defendants equitable estoppel is inapplicable to this case.

"Generally, the doctrine of equitable estoppel may be invoked when a party reasonably and detrimentally relies on the words or conduct of another." Brown's Furniture, Inc. v. Wagner, 171 Ill. 2d 410, 431, 665 N.E.2d 795, 806 (1996). However, public policy disfavors application of equitable estoppel to bar state action. Deford-Goff v. Department of Public Aid, 281 Ill. App. 3d 888, 893, 667 N.E.2d 701, 705 (1996). Thus, equitable estoppel will not apply unless (1) doing so would be necessary to prevent fraud and injustice and (2) the state itself induced a private actor's reliance. "When equitable estoppel is invoked against the State, it will be applied only to prevent fraud and

injustice." Deford-Goff, 281 Ill. App. 3d at 893, 667 N.E.2d at 705. Otherwise, estoppel would "impair the functioning of the [s]tate in the discharge of its government functions" because "valuable public interests may be jeopardized or lost by the negligence, mistakes[,] or inattention of public officials." Hickey v. Illinois Central R.R. Co., 35 Ill. 2d 427, 447-48, 220 N.E.2d 415, 426 (1966). This is particularly true when, as here, public revenues are concerned. Deford-Goff, 281 Ill. App. 3d at 893, 667 N.E.2d at 705. Further, when estoppel is sought to bar state action, the acts inducing detrimental reliance "generally must be the acts of the [s]tate itself, such as legislation, rather than the unauthorized acts of a ministerial officer." Deford-Goff, 281 Ill. App. 3d at 893, 667 N.E.2d at 705.

The January 2001 letter, in which the chief of the bureau of policy of the predecessor to Healthcare and Family Services wrote, "Income given away during the same month it is received is not subject to the transfer[-]of[-]asset policy," cannot estop the departments from relying on contrary legal authority in imposing a penalty period of ineligibility on Brian's gifts of Betty's social-security benefits to himself and his siblings. Estoppel cannot apply against the defendants in this case because no fraud or injustice resulted from the penalty

- 23 -

period.  Penalties for nonallowable transfers help ensure those applicants who can afford to contribute to their own medical needs do so.  Betty, who made gifts of income totaling nearly $20,000 in the year preceding her application for medical assistance, could clearly have contributed to her own long-term-care expenses.  It was neither fraudulent nor unjust for the departments to impose penalties for these gifts when the purpose of the penalties was solely to account for money that should have been available to offset the government's contributions to Betty's long-term care.

Further, Brian's reliance on the letter does not support application of equitable estoppel because the letter does not constitute an act by the state itself.  The chief of the bureau of policy of the predecessor agency of Healthcare and Family Services is a ministerial officer whose erroneous acts should not bind the state through equitable estoppel.  See Deford-Goff, 281 Ill. App. 3d at 893, 667 N.E.2d at 705.  The policy expressed in the letter is irreconcilable with federal and state laws, and it would be absurd for us to require the departments to adhere to erroneous interpretations of the statutes and rules they enforce, made by officers of a predecessor agency some years earlier for the benefit of an

- 24 -

unrelated third party.  Accordingly, we reverse the circuit court's determination that Brian's reliance on the January 2001 letter estopped the departments from applying relevant law that contradicted the letter's statement of policy.

Even if we were to look past the compelling precedent that warns against application of equitable estoppel in these circumstances, we are troubled by several questions regarding the merits of Brian's claim that were not satisfactorily addressed by either the departments or the circuit court and on which we are not convinced Brian carried his burden of proof at either level of proceedings below.  These questions include whether Brian actually relied on the January 2001 letter; whether such reliance, if actual, was also reasonable; and whether such reliance, if actual and reasonable, was also detrimental.  However, we find it unnecessary to reach these questions as we conclude equitable estoppel should not be applied in the first place.

Lastly, we note the State of Illinois departments involved in this litigation owe it to the citizens of this state to adopt clear, understandable rules which assist applicants in navigating the complicated eligibility and transfer of assets requirements of the Medicaid laws.  If the participants can know

and understand the rules, they can avoid the minefield that erupted in this case.

### III. CONCLUSION

For the reasons stated, we reverse the circuit court's judgment and affirm the administrative decision imposing the full 17-month penalty period as a condition of Betty's medical-assistance eligibility.

Reversed.

MYERSCOUGH and APPLETON, JJ., concur.