# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Frerichs v. State of Illinois*, 2011 IL App (4th) 101046

---

| | |
|---|---|
| Appellate Court Caption | ROLAND FRERICHS, as Agent for the Estate of CHRISTENA FRERICHS, Plaintiff-Appellant, v. THE STATE OF ILLINOIS, Acting Through THE DEPARTMENT OF HUMAN SERVICES and CAROL ADAMS, Its Director; and THE DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES and BARRY S. MARAM, Its Director, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-10-1046 |
| Filed | October 11, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The decision of the Department of Healthcare and Family Services and the Department of Human Services finding plaintiff's mother eligible for Medicaid assistance, but assessing an eight-month penalty against her based on her nonallowable transfers of her income from two annuities, her social security benefits, and other monetary gifts to plaintiff was affirmed over plaintiff's contention that the penalty period was improperly determined. |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 09-MR-197; the Hon. Scott Drazewski, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Duane D. Young (argued), of LaBarre, Young & Behnke, of Springfield, for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Carl J. Elitz (argued), Assistant Attorney General, of counsel), for appellees.

Panel

JUSTICE McCULLOUGH delivered the judgment of the court, with opinion.

Presiding Justice Knecht and Justice Cook concurred in the judgment and opinion.

## OPINION

¶ 1     Plaintiff, Roland Frerichs, as agent for the estate of his mother, Christena Frerichs, sought judicial review of an administrative decision of defendants, the Department of Healthcare and Family Services (Healthcare and Family Services), which investigated Christena's application, and the Department of Human Services (Human Services), which found Christena eligible for Medicaid assistance but assessed an eight-month penalty due to nonallowable transfers of her assets, including income. The circuit court affirmed defendants' final administrative decision. Roland appeals, arguing defendants erred in imposing an eight-month penalty and the circuit court incorrectly affirmed defendants' administrative decision. We affirm.

¶ 2     In December 2004, Christena entered a long-term-care facility and began receiving Medicaid assistance. Throughout the proceedings at issue, Roland acted on Christena's behalf pursuant to a power of attorney. In January 2008, Christena received an inheritance in the amount of $114,862.48. As a result, she had assets in excess of Medicaid limits and, in February, March, April, and May 2008, she used her own funds to pay for her medical care.

¶ 3     The private rate at Christena's long-term care facility was $170 per day or $5,100 per month. At the time she received her inheritance, Christena had a monthly income of $1,561 per month from social security and $906.93 per month from an annuity. After receiving her inheritance, Christina purchased a second annuity for $50,000. That annuity provided for 56 monthly payments to Christina of $817.02, beginning in January 2008. In each of the months of February, March, April, and May 2008, Christina gave Roland $10,100, as well as the total amount of her social security income and both annuity payments. Ultimately, Christena requested a reinstatement of her Medicaid benefits, effective June 1, 2008.

¶ 4     In October 2008, Human Services notified Christena that, although she was eligible for

medical assistance, her approval did not include payments for long-term-care services from February through September 2008, due to nonallowable transfers of assets. It imposed a two-month penalty for each of the four months Christena gifted money to Roland. Included within its calculation of nonallowable transfers, were the gifts of $10,100 made to Roland in each of the four months, as well as the gifts to Roland of Christena's monthly social security income ($1,561) and monthly annuity payments ($906.93 and $817.02). Human Services determined those monthly amounts totaled $13,384.95 and were more than twice Christena's monthly long-term-care expenses.

¶ 5 Roland, acting on Christena's behalf, appealed the imposition of the eight-month penalty, arguing the penalty period was improperly determined. He maintained that the gifts of Christena's three recurring incomes (from social security and her annuities) should not have been included within the penalty calculations because they were gifted within the same month they were received. Roland contended that only the monthly $10,100 gifts should have been considered and would have resulted in only a one-month penalty period for each of the months in which that amount was gifted. He concluded that only a four-month penalty, from February through May 2008, was appropriate. On June 5, 2009, following a hearing before an administrative law judge, Human Services issued a final administrative decision in the matter, finding its local office correctly imposed an eight-month penalty period and affirming its decision.

¶ 6 On July 9, 2009, Roland, as Christena's agent, filed a complaint for administrative review in the circuit court. He argued Human Services' final administrative decision was wrongful, erroneous, and improper because defendants acted contrary to their own published policies and incorrectly designated income as an asset that was subject to asset-transfer rules. Before the court, Roland asserted Christena, in gifting her income, relied on defendants' published policies, and interpretation of that policy, stating that income given away during the same month it is received was excluded from the transfer of asset policy. He cited Human Services' "Cash, SNAP, and Medical Policy Manual," PM 07-02-06-a (eff. Mar. 1, 1997) (hereinafter Medical Policy Manual), providing as follows:

> "Money considered as income for a month is not an asset for the same month. Any income added to a bank account is income for that month, and not a part of the account's asset value for the month. To figure the asset value of the account, subtract the income from the bank balance. For the following month(s), any remaining income in the account is an asset."

¶ 7 Roland also referenced a letter, dated January 3, 2001, written by John Rupcich, the chief of the bureau of policy of the Department of Public Aid (now known as the Department of Healthcare and Family Services), stating "[i]ncome given away during the same month it is received is not subject to the transfer of asset policy." That letter was written to Joseph Oettel, an estate and financial planner, in response to Oettel's inquiry about the policy of Human Services on transfers of income. The record reflects Oettel acted as Christina's approved representative and was authorized to apply for certain benefits on her behalf. During oral argument in this matter, Roland conceded that Oettel did not make his inquiry on Christena's behalf or in reference to her specific situation.

¶ 8    While this matter was pending before the circuit court, Christena died and Roland was appointed as a special representative to act in her stead. On March 12, 2010, the court determined defendants' final administrative decision was not arbitrary, unreasonable, or unsupported by the evidence and affirmed their decision. On April 12, 2010, Roland filed a motion to reconsider. On November 30, 2010, the court denied his motion.

¶ 9    This appeal followed.

¶ 10    On appeal, Roland argues defendants improperly imposed an eight-month penalty with respect to Christena's Medicaid benefits. He maintains that, under defendants' published rules, the penalty period should have been only four months. Roland contends defendants are estopped from deviating from their published policies and also the interpretation of that policy as expressed in the January 2001 letter.

¶ 11    "When an appeal is taken to the appellate court following entry of judgment by the circuit court on administrative review, it is the decision of the administrative agency, not the judgment of the circuit court, which is under consideration." *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 386, 925 N.E.2d 1131, 1142 (2010). Where the only disputed issue concerns an agency's conclusion on a point of law, the agency's decision is subject to *de novo* review. *Provena*, 236 Ill. 2d at 387, 925 N.E.2d at 1143. However, "[e]ven where review is *de novo*, an agency's construction is entitled to substantial weight and deference." *Provena*, 236 Ill. 2d at 387 n.9, 925 N.E.2d at 1143 n.9. "Courts accord such deference in recognition of the fact that agencies make informed judgments on the issues based upon their experience and expertise and serve as an informed source for ascertaining the legislature's intent." *Provena*, 236 Ill. 2d at 387 n.9, 925 N.E.2d at 1143 n.9 (citing *Metropolitan Water Reclamation District of Greater Chicago v. Department of Revenue*, 313 Ill. App. 3d 469, 475, 729 N.E.2d 924, 929 (2000)).

¶ 12    In this instance, Roland does not challenge defendants' factual findings and the facts are not in dispute. The issues raised on appeal present only legal questions that are subject to a *de novo* standard of review.

¶ 13    Additionally, review of this case is shaped by this court's recent decision in *McDonald v. Illinois Department of Human Services*, 406 Ill. App. 3d 792, 952 N.E.2d 21 (2010), *appeal denied*, No. 111970, 949 N.E.2d 1099 (Ill. May 25, 2011) (table). The parties acknowledge *McDonald*, which addressed the same issues under very similar factual circumstances. Roland argues *McDonald* was wrongly decided while defendants maintain it is controlling and supportive of their position. We agree with defendants.

¶ 14    In *McDonald*, 406 Ill. App. 3d at 795, 952 N.E.2d at 23, the plaintiff applied for medical-assistance benefits on behalf of his mother. In the year preceding the application, the mother's assets and social security income had been gifted to the plaintiff and his siblings on an almost monthly basis. *McDonald*, 406 Ill. App. 3d at 795, 952 N.E.2d at 23. Human Services approved the mother's application for medical assistance but imposed a 17-month penalty period. *McDonald*, 406 Ill. App. 3d at 795, 952 N.E.2d at 23. The plaintiff, on his mother's behalf, appealed the portion of the penalty that was attributable to any gifts of his mother's income but Human Services upheld the full penalty. *McDonald*, 406 Ill. App. 3d at 795, 952 N.E.2d at 23. The plaintiff then initiated an administrative review action in the

circuit court. *McDonald*, 406 Ill. App. 3d at 795, 952 N.E.2d at 24.

¶ 15 Before the circuit court, the plaintiff raised precisely the same issues raised in the case at bar, arguing (1) defendants misapplied their own policies because a gift of income made in the same month it is received does not constitute a nonallowable transfer of assets and (2) defendants were estopped from deviating from their expressed interpretation of policy. *McDonald*, 406 Ill. App. 3d at 795-96, 952 N.E.2d at 24. He relied on the same provision of the Medical Policy Manual that Roland cites in this case (Medical Policy Manual, PM 07-02-06-a (eff. Mar. 1, 1997)), as well as the January 2001 Rupcich letter issued to Oettel and upon which Roland heavily relies. *McDonald*, 406 Ill. App. 3d at 796, 952 N.E.2d at 24.

¶ 16 Ultimately, this court agreed with the defendant agencies and affirmed the decision to impose a 17-month penalty period as a condition of the mother's medical-assistance eligibility. *McDonald*, 406 Ill. App. 3d at 804, 952 N.E.2d at 31. We first determined that "[f]ederal and state statutes, state administrative rules, and Human Services' departmental Medical Policy Manual all support[ed] [the] defendants' conclusion that gifts of income are subject to asset-transfer policy," noting each source defined asset transfers consistently. *McDonald*, 406 Ill. App. 3d at 798, 952 N.E.2d at 26. With respect to federal law, we stated as follows:

> "The federal statute imposes a penalty when an applicant or his or her spouse 'disposes of assets for less than fair market value' within a certain period leading up to the applicant's request of benefits. 42 U.S.C. § 1396p(c)(1)(A) (2006). In turn, the statute defines 'assets' in terms of income and resources. 'The term "assets", with respect to an individual, includes all income and resources of the individual and of the individual's spouse, including any income or resources which the individual or such individual's spouse is entitled to but does not receive because of action.' 42 U.S.C. § 1396p(h)(1) (2006). Thus, under the federal statute, a transfer of a medical-assistance applicant's income for less than fair market value would subject the applicant to penalties. *This result is mandated on all states that participate in the Medicaid program*. 42 U.S.C. § 1396p(c) (2006)." (Emphasis added.) *McDonald*, 406 Ill. App. 3d at 798-99, 952 N.E.2d at 27.

¶ 17 Roland argues *McDonald* relied too heavily on federal law when the state is charged with making its own Medicaid policy. Indeed, a state that chooses to participate in the Medicaid program designs its own plans and sets its own reasonable standards for eligibility and assistance while complying with certain broad federal requirements. *Gillmore v. Illinois Department of Human Services*, 218 Ill. 2d 302, 305, 843 N.E.2d 336, 338 (2006). However, as *McDonald* pointed out, federal law mandates state compliance with its asset-transfer policy and Illinois law is, in fact, compliant with federal requirements. Roland overlooks these points.

¶ 18 The Illinois Public Aid Code (Code) (305 ILCS 5/5-2.1(a) (West 2008)) provides as follows:

> "To the extent required under federal law, a person shall not make or have made a voluntary or involuntary assignment or transfer of any legal or equitable interests in real property or in personal property, whether vested, contingent or inchoate, for less

than fair market value. A person's interest in real or personal property includes all income and assets to which the person is entitled or to which the person would be entitled if the person had not taken action to avoid receiving the interest."

Additionally, as addressed in *McDonald*, 406 Ill. App. 3d at 799, 952 N.E.2d at 27, relevant sections of the Illinois Administrative Code (Administrative Code) are further consistent with federal and state statutes. In *McDonald*, we noted the Administrative Code defined "asset transfers in relation to transfers of personal property rather than assets" and, by doing so "does not distinguish between transfers of assets and transfers of income." *McDonald*, 406 Ill. App. 3d at 799, 952 N.E.2d at 28 (citing 89 Ill. Adm. Code 120.387 (2010)).

¶ 19    Finally, in *McDonald*, 406 Ill. App. 3d at 800, 952 N.E.2d at 80, we also found Human Services' Medical Policy Manual to be consistent with federal and state laws on the transfer of assets and related penalties. We stated as follows:

"Like the Administrative Code, the manual defines 'transfer of assets' in terms of personal property without distinguishing between income and assets. Section PM 07-02-20 of the Medical Policy Manual states, in pertinent part:

'An asset transfer occurs when a client or their spouse *** buys, sells, [or] gives away real or personal property or changes the way property is held. *** A transfer *** occurs when an action is taken that causes an asset not to be received (for example, waiving the right to receive an inheritance).' Medical Policy Manual, PM 07-02-20 (eff. April 17, 1998).

*** In turn, section PM 07-02-06 of the policy manual defines 'personal property' as 'anything owned by a person that is not land or permanently affixed to land,' including checking-account funds. Medical Policy Manual, PM 07-02-06 (eff. March 1, 1997). The policy manual goes on to define allowable and nonallowable transfers but both relate back to the definition of 'asset transfer' that would include transfers of income as well as transfers of assets. See Medical Policy Manual, PM 07-02-20-b, 07-02-20-c, 07-02-20-d (1998) (eff. April 17, 1998, March 1, 1997, and April 17, 1998, respectively)." *McDonald*, 406 Ill. App. 3d at 800, 952 N.E.2d at 28.

¶ 20    Despite the foregoing analysis, Roland argues, as the plaintiff did in *McDonald*, that section PM 07-02-06-a of the Medical Policy Manual distinguishes income from assets for purposes of its asset-transfer policy and warrants reversal of defendants' final administrative decision. That section states as follows:

"Money considered as income for a month is not an asset for the same month. Any income added to a bank account is income for that month, and not a part of the account's asset value for the month. To figure the asset value of the account, subtract the income from the bank balance. For the following month(s), any remaining income in the account is an asset." Medical Policy Manual, PM 07-02-06-a (eff. Mar. 1, 1997).

¶ 21    McDonald rejected the plaintiff's claims, finding that the distinction in section 07-02-06-a between income and assets applied only in the context of the spend-down provisions of the medical-assistance program. We stated as follows:

"[The plaintiff] misunderstands the significance of this distinction between

income and assets in determining medical-assistance eligibility. The distinction is necessary to determine whether and to what extent an applicant must 'spend down' his or her excess assets or income in order to be eligible for medical assistance. See 305 ILCS 5/5-2.07 (West 2008). Though equally essential to the operation of the medical-assistance program, the spend-down provisions are wholly separate from those defining eligibility penalties for nonallowable transfers. We find the manual's provisions regarding 'income mixed with an asset,' such as section PM 07-02-06–a, are irrelevant to the calculation of nonallowable transfers of personal property. Transfers of personal property for purposes of determining any penalty period include transfers of income and assets. When determining eligibility in the first instance, income that is consumed in a month on legitimate living expenses would not be counted as an asset. Accordingly, the departments did not err in their application of the law they are charged with implementing and enforcing or the Medical Policy Manual ***." *McDonald*, 406 Ill. App. 3d at 801, 952 N.E.2d at 29.

This court went on to note that a federal manual, which provides guidance to state employees in making penalty determinations, provides that a penalty *must* be imposed for institutionalized individuals when it is found that income or the right to income has been transferred. *McDonald*, 406 Ill. App. 3d at 802, 952 N.E.2d at 29-30. Additionally, we pointed out that the transfer of income under the circumstances presented was the transfer of a future asset and both federal and state asset-transfer policies extend to transfers of a person's future interest in an asset, including actions that cause an asset not to be received. *McDonald*, 406 Ill. App. 3d at 802, 952 N.E.2d at 30.

¶ 22   Here, Roland's argument that *McDonald* was wrongly decided is unpersuasive and we find that case to be controlling authority over the issues presented here. In *McDonald*, we rejected the plaintiff's assertion that the defendants misapplied their own policies regarding asset transfers by including transfers of monthly income within their calculations of the applicable penalty period. Like in *McDonald*, defendants in this case did not misapply their own policies. Their calculation of an eight-month penalty period based, in part, upon Christena's transfer of her monthly social security income and annuity payments complied with relevant Medicaid laws.

¶ 23   Next, as in *McDonald*, Roland also raises a claim of equitable estoppel. He argues defendants are estopped from imposing an eight-month penalty based upon Christena's transfers of income because such action is contrary to the express interpretation of policy in Rupcich's January 2001 letter. Roland argues Christena and her representatives acted in reliance upon the contents of that letter.

¶ 24   "Generally, the doctrine of equitable estoppel may be invoked when a party reasonably and detrimentally relies on the words or conduct of another." *Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410, 431, 665 N.E.2d 795, 806 (1996). "However, against the State, estoppel is applied only to prevent fraud and injustice, and this is especially true when the public revenues are involved." *Brown's Furniture*, 171 Ill. 2d at 431, 665 N.E.2d at 806. Further, "[t]he affirmative acts of the State inducing detrimental reliance in another generally must be the acts of the State itself, such as legislation, rather than the unauthorized acts of a ministerial officer." *Deford-Goff v. Department of Public Aid*, 281 Ill. App. 3d 888, 893,

667 N.E.2d 701, 705 (1996).

¶ 25 Again, *McDonald* addressed the precise issue now presented on appeal. There, the plaintiff also made an estoppel argument, relying on a January 2001 letter from Rupcich, the chief of the bureau of policy of the Department of Public Aid. *McDonald*, 406 Ill. App. 3d at 796, 952 N.E.2d at 25. That letter appears to be the same letter at issue in this case as it was also in response to an inquiry from Oettel and contained the same language at issue here: " 'Income given away during the same month it is received is not subject to the transfer of asset policy.' " *McDonald*, 406 Ill. App. 3d at 796, 952 N.E.2d at 25. The only apparent difference between this case and *McDonald* is that Oettel had no connection with the *McDonald* case or its parties while he is shown through the record in this case to have, at some point in time, been Christena's representative. *McDonald*, 406 Ill. App. 3d at 796, 952 N.E.2d at 25.

¶ 26 In *McDonald*, 406 Ill. App. 3d at 803, 952 N.E.2d at 31, we determined equitable estoppel was inapplicable. First, we held that no fraud or injustice resulted from the imposed penalty period. *McDonald*, 406 Ill. App. 3d at 803, 952 N.E.2d at 31. We stated as follows:

> "Penalties for nonallowable transfers help ensure those applicants who can afford to contribute to their own medical needs do so. [The plaintiff's mother], who made gifts of income totaling nearly $20,000 in the year preceding her application for medical assistance, could clearly have contributed to her own long-term-care expenses. It was neither fraudulent nor unjust for the departments to impose penalties for these gifts when the purpose of the penalties was solely to account for money that should have been available to offset the government's contributions to [the plaintiff's mother's] long-term care." *McDonald*, 406 Ill. App. 3d at 803-04, 952 N.E.2d at 31.

Additionally, this court found the letter at issue did not constitute an act by the state itself, stating as follows:

> "The chief of the bureau of policy of the predecessor agency of Healthcare and Family Services is a ministerial officer whose erroneous acts should not bind the state through equitable estoppel. [Citation.] The policy expressed in the letter is irreconcilable with federal and state laws, and it would be absurd for us to require the departments to adhere to erroneous interpretations of the statutes and rules they enforce, made by officers of a predecessor agency some years earlier for the benefit of an unrelated third party." *McDonald*, 406 Ill. App. 3d at 804, 952 N.E.2d at 31.

¶ 27 Again, we find *McDonald* was correctly decided and is controlling over this issue. Like the plaintiff's mother in *McDonald*, Christena gifted income that could have been used to assist with her long-term care and offset the government's contributions. The imposition of an eight-month penalty as a result of those gifts does not result in fraud or injustice. As discussed, Rupcich's letter was also contrary to relevant federal and state law. Moreover, we agree that the letter represents the unauthorized act of a ministerial officer. There was no act by the state, such as through legislation, upon which Christena or her representatives relied to their detriment.

¶ 28 Roland points out that Rupcich's letter was in response to an inquiry from Oettel, Christena's representative, which Roland maintains strengthens the argument that she relied

on its contents and distinguishes her case from the plaintiff in *McDonald*. However, Roland concedes that Oettel made his inquiry on behalf of a client, or clients, other than Christena. Also, the record shows Oettel's inquiry was made, and Rupcich's response received, approximately four years before Christina entered a long-term-care facility and approximately eight years before the income transfers at issue were made. Moreover, such a distinction is of no consequence where it has already been determined that the requirements for estoppel in the context of state action have not been met.

¶ 29 Finally, Roland argues that *McDonald* incorrectly stated the Department of Public Aid was the predecessor agency to Healthcare and Family Services. In fact, Healthcare and Family Services was formerly known as the Illinois Department of Public Aid. See 305 ILCS 5/2-12(3) (West 2008). Even were it incorrect, this characterization by *McDonald* had little bearing on its ultimate conclusion that estoppel was inapplicable under the circumstances presented.

¶ 30 Like in *McDonald*, equitable estoppel is inapplicable in this case. Christena suffered no fraud or injustice by the imposition of a penalty and Rupcich's letter was not the equivalent of state action.

¶ 31 This case is similar to *McDonald*, both factually and with respect to the issues presented on appeal. Roland's contention that *McDonald* was wrongly decided or distinguishable enough from this case to warrant reversal are unpersuasive and without merit. We agree with *McDonald*'s reasoning and conclusions and find it controlling of the issues in this case. As a result, we find defendants committed no error in their interpretation of the asset-transfer policies at issue or in assessing Christena an eight-month penalty.

¶ 32 For the reasons stated, we affirm the circuit court's judgment.

¶ 33 Affirmed.